**BRIAN C. LOWNEY**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**101 E. Front St., Suite 401**
**Missoula, MT 59802**
**Phone: (406) 542-8851**
**FAX: (406) 542-1476**
**Email: brian.lowney@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 23-44-M-DWM** |
| **Plaintiff,** | |
| **vs.** | |
| | **SENTENCING MEMORANDUM** |
| **NICHOLAS GEOFFREY COMBS,** | |
| **Defendant.** | |

The United States, represented by Assistant U.S. Attorney Brian C. Lowney,
files the following in anticipation of the sentencing hearing set in this case on May
14, 2024.

# INTRODUCTION

On December 20, 2023, Nicholas Geoffrey Combs pled guilty to count 1 of the indictment, distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), pursuant to a plea agreement with the United States. Under the terms of the plea agreement, the United States intends to dismiss the remaining counts of the indictment at sentencing. PSR ¶ 9; Doc. 16 ¶ 2.

The United States Probation Office prepared a Presentence Investigation Report ("PSR"), which calculated Combs' advisory guideline range at 210 to 240 months based on a total offense level (TOL) of 37 and a criminal history category (CHC) of I.[1] PSR ¶ 102. Per statute, the minimum term of imprisonment is five years and the maximum term is 20 years. PSR ¶ 101. Both the statutory and guidelines term of supervised release is five years to life. PSR ¶¶ 106-107.

Combs' objects only to the total amount of restitution requested by the victims of his offense. *Addendum to PSR.*

The United States recommends a guidelines term of imprisonment, followed by a lifetime of supervised release, with imposition of the special assessments applicable to Combs' crime of conviction. Lastly, the United States requests the Court impose restitution to all victims who submitted restitution requests, pursuant to 18 U.S.C. § 2259.

---

[1] Though Combs' TOL of 37 and CHC of I would generally result in a guidelines range of 210 to 262 months, because the statutory maximum sentence under count 1 is 20 years, the guideline range is amended to reflect the statutory maximum. PSR ¶ 102; USSG §5G1.1(c)(1).

The United States may call Detective Josh Harris, the investigating agent, at sentencing to testify as to any disputed issues of fact set forth in the PSR. The United States will file a separate document detailing the scope and purpose of this testimony pursuant to the Court's prior orders. Doc. 20 at 9.

## ARGUMENT

A.    **Restitution**

The Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (AVAA), Public Law 115-299, enacted on December 7, 2018, created new penalties and made several changes to existing child pornography laws, specifically with regard to restitution. As it relates to the issue at bar, the AVAA provides that any defendant convicted of "trafficking in child pornography" must pay a minimum of $3,000 in restitution per victim for each count of conviction. Combs' conviction under 18 U.S.C. § 2252(a)(2) is a child pornography trafficking offense for purposes of this provision. 18 U.S.C. § 2259(c)(3). The amount of restitution ordered is not dependent on a defendant's ability to pay. 18 U.S.C. § 2259(b)(4)(B). Instead, it is based upon a court's determination of the "full amount" of losses incurred by a victim as a result of the trafficking in child pornography depicting the victim. 18 U.S.C. § 2259(b)(2).

Here, several different victims, as reflected by their corresponding series names, have submitted restitution requests and paperwork supporting those

requests.  PSR ¶ 115.  The requests listed in the PSR range from $3,000 to

$23,694.12.  *Id.*  Additionally, three other victims submitted restitution requests that

the undersigned failed to forward to the PSR writer prior to submission of the final

PSR.[2]  Those additional restitution requests belong to the  "Jenny" series ($10,000

request), the "aprilblonde" series ($5,000 request) and the "Sweet White Sugar"

series ($5,000 request).  In total, including the requests previously included in the

PSR, the sum of requested restitution is $100,194.12.

The Court "shall order restitution in an amount that reflects the defendant's

relative role in the causal process that underlies the victim's losses, but which is no

less than $3,000." 18 U.S.C. § 2259(a)(2)(B).[3]  In *Paroline v. United States*, 572

U.S. 434, 134 S.Ct. 1710 (2014), the Supreme Court acknowledged the difficulty in

determining what amount of the losses suffered by a victim "are the proximate

result of the offense conduct of a particular defendant who is one of thousands who

have possessed and will in the future possess the victim's images but who has no

other connection to the victim."  *Id.* at 449.  However, the *Paroline* court offered

that sentencing courts could consider a number of factors "that bear on the relative

causal significance of the defendant's conduct in producing those losses," such as

---

[2] That documentation has now been provided to both the United States Probation Office and defense counsel.

[3] If this Court agrees that the victim seeking restitution has met § 2259's proximate cause requirement, it must then calculate the amount of the losses that "comport[] with the defendant's relative role in the causal process that underlies the victim's general losses." *Paroline,* 572 U.S. at 437.  The victims have submitted restitution requests and supporting documentation.  This information has been produced to the defendant and the United States Probation Office.  Should the Court wish to inspect it prior to sentencing it is available for submission under seal.

the number of past criminal defendants who have contributed to the victim's losses, a reasonable prediction of number of future defendants likely to be convicted of contributing to these losses, whether the defendant distributed the image, how many images of the victim the defendant possessed and whether he had any connection to their original production. *Id*. at 460.

Here, Combs possessed files from 120 identified series of regularly trafficked child pornography. 12 of those victims are seeking restitution. The defendant possessed a total of 280 files depicting those victims.

To assist the Court, the United States researched the previous restitution awards issued in Montana for each series victim that has requested restitution, including those listed in the PSR and the three additional series noted above. That data is reflected in the chart below:

| Series Name | Number of Images | Evidence of Distribution by Combs | Number of Prior Restitution Orders (MT) | Amounts |
|---|---|---|---|---|
| Vicky | 2 | No | 18 | $3,000 x 13<br>$10,000 x 1<br>Other amt x 4 |
| Best Necklace | 12 | Yes | 4 | $3,000 (all) |
| Marineland1 | 1 | No | 18 | $3,000 x 12<br>$10,000 x 1<br>Other amt x 5 |
| Tara | 6 | No | 3 | $3,000 (all) |
| Linda & Patty 1 | 1 | No | 1 | $3,000 |
| PD11 | 2 | No | 1 | $3,000 |
| Jan_Socks1 | 1 | No | 5 | $3,000 x 4<br>$10,000 x 1 |
| 8kids4 | 3 | No | 2 | $3,000 (all) |

| ZooFamily1 | 3 | No | 1 | $3,000 |
| Jenny | 70 | No | 11 | $3000 (all) |
| aprilblonde | 178 | No | 7 | $3,000 x 6<br>$5,000 x 1 |
| Sweet White Sugar | 1 | No | 19 | $3,000 x 17<br>$5,000 x 2 |

For the listed series, the United States' evidence shows Combs distributed at least those images belonging to the "Best Necklace" series. The evidence does not demonstrate Combs' distributed any of the other identified series in the chart.

Generally, for those defendants that pled to a trafficking of child pornography charge (possession, receipt, distribution), most were ordered to pay $3,000 to each series victim. While this likely is not the complete dataset of all awards involving these victims, it does provide a benchmark for the Court.

However, every victim in this case (besides the "Linda & Patty 1" series) seeks a restitution award of over $3,000, for a total of $100,194.12 in restitution requests. Per the plea agreement, because the total exceeds $50,000, the defendant is free to litigate the appropriate amount of restitution to be awarded to each victim. Doc. 16 ¶ 9. Given the extensive submissions of the victims in this case detailing their losses and the reasoning underlying their requests, the United States moves the Court to award each listed victim their full amount of requested restitution.

# RECOMMENDATION

Section 3553(a) of Title 18 of the United States Code contains prefatory language: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."  Those purposes include the need for the sentence to:

- reflect the seriousness of the offense;

- promote respect for the law;

- provide just punishment for the offense;

- afford adequate deterrence to criminal conduct;

- protect the public from further crimes of the defendant; and,

- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In addition, subsection (1) of § 3553(a) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of the defendant; subsection (3) requires the Court to consider the kinds of sentences available; subsections (4), (5), and (6) require the Court to consider the sentencing guidelines and policy statements, and to avoid unwarranted sentencing disparity; and subsection (7) requires the Court to provide restitution to victims.

Combs is 29 years old and has no other criminal history.  However, the circumstances surrounding his offenses demonstrate he poses a grave danger to the

community, and particularly to children. Combs possessed thousands of images of graphic sexual and physical violence perpetrated against children, some as young as 4 months old. PSR ¶¶ 34-47. Those images include depictions of babies being tortured and raped and the heads and bodies of decapitated children. PSR ¶ 35. Combs distributed some of these images to others. PSR ¶¶ 20-22. Further, Combs admitted he perpetuated the trade of sexual abuse of children by exchanging such images with other users for additional child sexual abuse material (CSAM) that he had not yet acquired. PSR ¶¶ 32-33. Though Combs minimized his interests in sexual violence to Dr. Michael Scolatti in his psychosexual evaluation (PSE at 8) and told Detective Harris that he was "not interested" in sexual images depicting toddlers (PSR ¶ 33), on at least one occasion he solicited "rape videos" of prepubescent children from another user. PSR ¶ 38. As such, these images were not simply a by-product of Combs' interest in less disturbing imagery; procuring files depicting sexual and physical violence towards young children was Combs' goal.

Combs' attempts to dimmish his culpability are replete throughout his evaluations. In the PSE, Combs denied that he had a sexual attraction to any children that he has seen in person, explaining that he had not had sexual thoughts about "a real child", but only about those children in the "anime and child porn" he possessed and distributed. PSE at 9; 11. The attitude Combs displays by

categorizing his current victims as distinct from "real" children is concerning, as it demonstrates his dehumanization of the children he is victimizing. But beyond that, Combs' behavior and testing belie his remonstration that he is not interested in physically sexually abusing a child. While Combs told Detective Harris at the time of their interaction that he was not sexually interested in children younger than 12 or 13 years old, his possession and distribution of extremely violent and sexual imagery of very young children undercuts that assertion. PSR ¶ 32; 35. Moreover, Dr. Scolatti concluded that Combs "demonstrates a consistent sexual attraction to prepubescent girls" (age 6-13), even in the face of Combs' attempts to disclaim such interest. PSE at 16. Further, Dr. Scolatti concluded that Combs "meets the criteria for the diagnoses of Pedophilia", which involves sexual attraction to child aged 13 or younger. PSE at 21. As such, and despite Combs' protestations otherwise, he has a demonstrated and persistent sexual interest in young children.

Further, while Combs disclaims that he has had sexual thoughts about "a real child", that is inaccurate. Combs has victimized "real" children even beyond those depicted in the images and videos and he possessed and distributed. Combs told Detective Harris that he has posed as a child online to solicit sexual images from 16- and 17-year-old children. Combs further expounded that his general method of doing so was to reach out to a child on Reddit that "he thought was cute" and to ask "to exchange pictures". Combs' behavior was so flagrant that other users had

posted warnings about his behavior, with one saying "this guy is a pedo, he dm'd me casually, then brought up asking for a video of me inserting objects into my ass." PSR ¶ 28. Yet Combs' description of his behavior to Dr. Scolatti is much more passive, as he recounts these interactions as beginning with children "post[ing] nudes and [I'd] message them and talk back and forth a tiny bit." PSE at 8. That is simply untrue, per Combs' on recitation to Detective Harris and the evidence collected in this case. Instead, Combs actively created personae that depicted him as a child in hopes that would ingratiate him to other children, and thereafter aggressively solicited sexual images and videos from those children. Therefore, Combs has already crossed the proverbial Rubicon of victimization of a "real" child, despite his assertion otherwise.

Additionally, while Combs offers that he has not engaged a child in physical sexual abuse, the evidence suggests he was preparing to do so. Combs possessed multiple "guides" on how to groom a child for sex, how to kidnap a child and how to locate a mother that was willing to provide their child for sexual abuse. PSR ¶ 39. Combs even possessed a guide on how to avoid law enforcement while perpetrating this abuse. *Id*. It is axiomatic that persons who are not planning to physically victimize children do not possess guides on how to do so.

Combs does not recognize that he is already victimizing children, nor is he able or willing to confront his sexual attraction to them. Combs dehumanization of

his victims is apparent in his statements and based on the material he possessed. That he sees children not as people with worth and value, but as objects to use for his sexual pleasure, is evident in the kinds of the files he possessed, which include titles like "CHILDREN ARE NOTHING BUT RAPE MEAT!" and depict children bound, gagged, and hung upside down while crying, screaming and being tortured during horrific sexual abuse. PSR ¶ 35. And because Combs views children this way, there is little that would restrain him from enacting such behavior against a child.

Dr. Scolatti notes that "online offenders appear to pose a lower risk of contact sexual offending because they score lower on antisocial tendencies", but Combs has many antisocial tendencies. PSE at 27. Dr. Scolatti describes Combs as "isolated in the community" and suffering from several mental disorders which "significantly affected his judgment, decision-making abilities, and impulse control" relative to the charged offenses. PSE at 29. Moreover, Dr. Scolatti opines that Combs was not "involved in the production of child pornography" as a positive indicator, but ignores that Combs, by his own admission, engaged in subterfuge to induce children to produce and send him sexually explicit content of themselves. PSE at 28-29. Therefore, Combs does not belong to the category of "first-time child pornography possession only offenders [that] appear to be very low risk of sexual

recidivism…", which Dr. Scolatti tacitly acknowledges in concluding that Combs is a moderate risk to reoffend based on his testing instruments.  PSE at 26; 28.

Combs' desire to downplay the harm he has caused and his true feelings towards children is understandable given the consequences he faces.  But his refusal to confront his sexual desires places the community at significant risk from him if he is not incarcerated for a considerable period.  If Combs cannot candidly acknowledge his deficits, he has little hope to alleviate his risk.  Based on his behavior and the risk he poses, the only suitable place for Combs is prison.

As such, Combs should receive a guidelines sentence of 210-240 months in prison, both to provide just punishment for his offense and to protect the public from his further crimes.

The Court should also impose supervised release for life.  18 U.S.C. § 3583(k) provides for a term of supervised release of five years to life in this case. Where "the instant offense of conviction is a sex offense," the "statutory maximum term of supervised release is recommended." USSG §5D1.2(b) (Policy Statement). Count 1 falls within the definition of the term "sex offense" set forth in §5D1.2, Application Note 1.

//

//

//

12

A guidelines sentence and a lifetime of supervised release is sufficient but not greater than necessary in light of the application of the 3553(a) factors.

DATED this 3rd day of April 2024.

JESSE A. LASLOVICH
United States Attorney


*/s/ Brian C. Lowney*
BRIAN C. LOWNEY
Assistant U.S. Attorney